2:25mj138 CMR

# AFFIDAVIT

I, Bret Curtis, Special Agent, Federal Bureau of Investigation ("FBI"), being duly sworn, declare and state as follows:

## INTRODUCTION & PURPOSE OF THE AFFIDAVIT

1. I make this affidavit in support of an application for the issuance of a seizure warrant to seize any and all funds, up to $34,450 in U.S. currency, held by JP Morgan Chase (JPMC) for cashier's check 2007901220 drawn on JPMC account number 758661391, issued from JPMC account 75572559 held in the name of Mario Milton and made payable to JEMANU LLC on January 28, 2025 (Target Asset).

2. The Target Asset is believed to be the proceeds of violations of Title 18 U.S.C. § 1341 (Wire Fraud) and 18 U.S.C. § 1956, and 1957 (Money Laundering) involving a business email compromise scam. For the court to authorize seizure of the Target Asset, it must find probable cause to believe that: (1) the crimes of Wire Fraud and/or Concealment Money Laundering were committed; and (2) the Target Asset has a connection to those offenses in the manner specified by the below statutes authorizing forfeiture.

3. For the reasons set forth below, there is probable cause to believe the Target Assets have a connection to Wire Fraud and Concealment Money Laundering and are subject to **civil seizure and forfeiture** under the following forfeiture authorities:

    a. Pursuant to 18 U.S.C. § 981(a)(1)(C) because the Target Asset is property, real or personal, which constitutes or is derived from proceeds traceable to a Wire Fraud scheme. Section 981(a)(1)(C) provides for the civil forfeiture of

any property, real or personal, which constitutes or is derived from proceeds from any offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses. A "specified unlawful activity," as defined in Section 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1). Section 1961(1) includes Wire Fraud violations.

b. Pursuant to 18 U.S.C. § 981(a)(1)(A) because the Target Asset was involved in Concealment Money Laundering or i traceable to such property.

c. Consequently, seizure of the Target Asset for civil forfeiture is authorized by 18 U.S.C. § 981(b).

4. For the reasons set forth below, there is probable cause to believe the Target Asset has a connection to Wire Fraud and Concealment Money Laundering and is also subject to **criminal seizure and forfeiture** under the following forfeiture authorities:

a. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) because the Target Asset is property, real or personal, which constitutes or is derived from proceeds traceable to Wire Fraud.

b. Pursuant to 18 U.S.C. § 982(a)(1) because the Target Asset was involved in Concealment Money Laundering or is traceable to such property.

c. Consequently, seizure of the Target Asset for criminal forfeiture is authorized by 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b).

5. With respect to seizure for criminal forfeiture, 21 U.S.C. § 853(f) provides that a court may issue a criminal seizure warrant when it "determines that there is probable

cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a protective order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture." There is a substantial risk that the Target Asset will be withdrawn, moved, dissipated, or otherwise become unavailable for forfeiture unless immediate steps are taken to secure it through a seizure warrant. As funds in a bank account, the Target Asset is inherently portable and fungible. Based on my training and experience, I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. In contrast, where electronic funds in an account are concerned, a seizure warrant guarantees that the funds will be in the Government's custody once the warrant is served.

6.   Although Rule 41(b) of the Federal Rules of Criminal Procedure provides that seizure warrants must be executed in the issuing district, other statutes authorize a magistrate to issue a warrant to seize property outside the district.  Under 21 U.S.C. § 853(l), district courts have jurisdiction to authorize a criminal seizure warrant under 21 U.S.C. 853(f) "without regard to the location of any property which may be subject to forfeiture."  Similar authority is granted by 18 U.S.C. § 981(b)(3) for civil forfeiture seizure warrants under 18 U.S.C. § 981(a). The Target Asset was fund by funds deposited into a

bank account in Highland Park, Michigan, which is located in the Easter District of Michigan.

## RELEVANT CRIMINAL STATUTES

7. Title 18 U.S.C. § 1343 states:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures . . . for the purpose of executing such scheme or artifice.

8. Title 18 U.S.C. § 1956(a)(1)(B)(i) states:

   Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
       (B) knowing that the transaction is designed in whole or in part—
           (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

## BACKGROUND OF AFFIANT

9. I am a Special Agent with the FBI in Salt Lake City, Utah. I have been an FBI Special Agent since February 22, 2004. In my capacity as a Special Agent with the FBI, I have conducted and participated in numerous official investigations into mail and wire fraud, money laundering and other financial and computer crimes as well as drug trafficking crimes. I am a graduate of the FBI Training Academy in Quantico, Virginia and have also attended advanced training classes in the areas of white-collar crime.

10. As an FBI Special Agent, I am familiar with the use of financial accounts by those who operate fraudulent schemes and the types of transactions reflected on financial

account records. I am also familiar with the principles of tracing assets into and through financial accounts.

11. The facts set forth in this affidavit are based on my personal observations, my training and experience, my review of documents, and interviews with witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested seizure warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## FACTS

12. This case involves the funds held in the Target Asset consisting of proceeds from what is commonly known as a Business Email Compromise (BEC) scam or scheme. My investigation revealed that the Target Asset was purchased using fraudulent proceeds from a victim of an online BEC Scam.

13. <u>Online BEC scams</u>. In a BEC scam, a cybercriminal impersonates a trusted individual within a company, like a CEO or vendor, through email to trick employees, clients or customers into sending money or sensitive information to a fraudulent account, often by creating a sense of urgency or using carefully crafted emails that appear legitimate.

14. Victim #1. Victim #1, age 64, resides in Kamas, Utah and fell victim to a BEC scam in which she believed she was sending money to a contractor to pay for construction costs associated with a home she and her husband, Victim #2, are building in the state of Utah.

15. To build the home, Victim #1 and Victim #2 are working with a contractor called E&H Construction. E&H Construction contracted with a company called Burchette & Burchette Hardwood Floors (B&B). On January 24, 2025 at 2:54 PM, B&B sent an email to Victim #1 with an invoice charging $99,645 for construction expenses. This legitimate invoice was attached to an email from becky@burchetteandburchette.com.

16. It should be noted that B&B's legitimate email address is becky@burchett**e**andburchette.com. On January 24, 2025 at 5:41 PM, Victim #1 received a fraudulent email from becky@burchettandburchette.com. It should be noted that the "e" in the first burchett**e** is missing from the fraudulent email address Victim #1 received at 5:41 PM. In this fraudulent email, a person claiming to represent B&B told Victim #1 she only needed to send 50% of the total payment. Wire instructions were attached to the email directing Victim #1 to wire the payment to JPMC bank account 755762559 in Highland Park, Michigan.

17. On January 27, 2025, Victim #1 sent an ACH transfer of $49,820 from her Bank of New York account to the JPMC account xx2559 as directed in the fraudulent email.

18. On January 30, 2025, Victim #2 got a call from Bank of New York. notifying her that JPMC investigators noticed the $49,820 ACH transfer to account xx2559 listed B&B as the receiver. JPMC investigators noted the name associated to account xx2559 was not B&B, it was Mario Milton.

19. After receiving this information, Victim #2 looked at the fraudulent email Victim #1 received from B&B and compared the legitimate invoice to the fraudulent

invoice. Victim #2 saw the legitimate B&B invoice documented they did not accept ACH transfers and only accepted payments by check. Victim #2 also saw how the fraudulent email came from an email address that was slightly different from the legitimate B&B email address. Victim #1 and Victim #2 learned they were directed to send the $49,820 to JPMC account xx2559 as part of a BEC scam.

20. On January 27, 2025, after JPMC account xx2559 received the $49,820 ACH transfer from Victim #1, that money was used to fund a $2,000 Zelle payment to Eferoghene Asagba's Citi Bank account. The money was also used to send two wire transfers totaling $13,370 to Mario Milton's Michigan First Credit Union account. On January 28, 2025, the rest of Victim #1 $49,820 was withdrawn from JPMC account xx2559 and used to purchase a $34,450 cashier's check made out to JMANU LLC, the Target Asset.

*- Continued Next Page -*

## CONCLUSION

21.     Based on the information contained in this affidavit, there is probable cause to believe that the crimes of Wire Fraud and Concealment Money Laundering have occurred and that the Target Asset is either proceeds of wire fraud and/or property involved in concealment money laundering. So, the Target Asset is subject to seizure and forfeiture under the above-noted authorities.

I swear, under penalty of perjury, that the foregoing is true and correct.

_____
Bret Curtis, Special Agent
Federal Bureau of Investigation


Sworn and subscribed before me by reliable electronic means this 13th day of February 2025.

_____
Cecilia M. Romero
United States Magistrate Judge